THE STATE ex rel. HADLEY, Attorney-General, v. W. J. ADKINS et al., Judges of County Court, Appellants.

**Division One, May 31, 1909.**

1. **APPELLATE JURISDICTION: Revenue Law: Preservation of Fund.** Under the provisions of the Constitution giving the Supreme Court jurisdiction of the appeal in a case involving "a construction of the revenue laws of this State," the term "revenue laws" covers and includes laws relating to the disbursement of the revenue and its preservation, as well as provisions relating to the assessment, levy and collection of it.

2. ———: ———: **Where Found.** In determining the appellate jurisdiction of the court it is of no importance whether the "revenue law" upon which jurisdiction depends is found in the chapter on "Revenue" or the one on "Counties" or the one on "Roads and Highways." It makes no difference where it is found if it is a "revenue law" within the meaning of the Constitution.

3. ———: ———: **County Depositaries.** The Supreme Court has jurisdiction over an appeal in a case involving a construction of the laws prescribing the duties of the county court in selecting a depositary of the county funds.

4. **APPEAL: No Exceptions: County Depositary: No Advertisement for Bids.** Interlocutory motions or motions for a new trial can be preserved for review only in a bill of exceptions; and if no such bill is preserved in the abstract, and the record proper is free from error, the Supreme Court will not reverse the judgment of the trial court quashing the record of the county court for that, in selecting a county depositary, the court had not advertised for bids, as the law (Sec. 6817, R. S. 1899) requires.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Joseph S. Long* and *James H. Pratt* for appellants.

*Herbert S. Hadley,* Attorney-General, *J. A. Sturges* and *O. R. Puckett* for respondents.

LAMM, P. J.—The Attorney-General sued out a writ of *certiorari* against defendants, the justices of the county court of McDonald county. The theory of the petition was that defendants, as such justices, had violated article 6, chapter 97, Revised Statutes 1899, relating to county depositaries. Section 6817 of that article ordains that the county courts, as a condition precedent to receiving proposals and accepting bids from banks or bankers to become county depositaries, shall publish a notice in some newspaper of the county for twenty days before the commencement of the May term of the court at which the letting occurs that such bids would be received. It is alleged that notice was not published for the time required by that statute but that, in the face of that fact, defendants accepted the bid of a certain bank, approved its bond, and, in violation of the statutes, made it the county depositary for the ensuing two years.

The writ issued to fetch up the record in that matter by a day certain. On return coming in, such steps were taken that the cause came to judgment, with the result that the proceedings in the county court in that behalf were held irregular and void, and were quashed..

From that judgment, defendants appealed to the St. Louis Court of Appeals. That court held it had no jurisdiction and transferred the case here (119 Mo.

221 Sup—8

App. 396). This on the theory that the case was one "involving the construction of the revenue laws of this State" (Sec. 12, art. 6, Constitution; Sec. 5 of the amendment to the Constitution adopted in 1884, R. S. 1899, p. 93).

I.  Of jurisdiction.  At the threshold is the question of jurisdiction. The county of McDonald is not a party. The title to real estate is not involved. No Federal or constitutional question is lodged in the case. There is no amount in dispute disclosed in the record, and if the Supreme Court has jurisdiction of the appeal it is because the case involves "the construction of the revenue laws of this State," as suggested by the Court of Appeals.

(a)  Speaking broadly, the revenue laws of the State are found bundled together as articles 1 to 12, inclusive, of chapter 149, Revised Statutes 1899, under the caption, "Revenue," and in acts of the Legislature amendatory thereof and supplemental thereto, passed since the revision of 1899. But the subject of revenue is dealt with in the Constitution and is involved in other statutes. Hence the fact that the subject-matter of county depositaries is found classified under the title of "Counties," in chapter 97, would not alone control, if it were found that in article 6 of that chapter under the subtitle, "County Depositary," a provision relating to revenue had place. The subtitle of "County Treasurers and County Warrants" (article 4) is also found classified under the main title of "Counties" in chapter 97, and some provisions of that article clearly relate to revenue— for example, section 6810 makes county warrants receivable for taxes, and other provisions relate to registration of county warrants and the order of priority of their payment, which, as presently seen, has been ruled to concern revenue.

In this connection it may be said that the constitutional phrase under review does not relate alone to the assessment of property, the levy or collection of taxes, licenses, etc., but "revenue laws of this State" may well include statutes concerning the disbursement of the revenue as well as the gathering of it into the county or State chest.

(b)   There being no adjudication of this court directly in point and none laying down general rules or providing a standard whereby a statute may be determined to be a revenue law, or not, we must look to the good sense of the thing and to our decisions on kindred matters, which, by parity of reasoning, may give out an interpreting side-light.

The working theory whereby courts get at the meaning of a constitutional provision, clothed in general language as is the one up for consideration, is to gradually and guardedly approach its full construction by a process of evolution by inclusion and exclusion, as cases arise. With that end in view, the drift and trend of the judicial mind is discoverable by an analysis of the decided cases. Let us attend to them.

Hilton v. Smith, 134 Mo. 499, was a controversy between two interpleading parties, each claiming a fund. The claim of one of the parties arose under abandoned tax laws. The construction of these laws was held in judgment. So, too, another question was in the case, viz., the interpretation of the phrase "the owner of the property" found in the provisions of the revenue chapter relating to suits for the recovery of back taxes. Though the Hilton case involved an amount in dispute less than conferred jurisdiction on this court, yet jurisdiction was retained on the ground that the construction of the revenue laws was involved.

Moore v. Vaughan, 127 Mo. 538, was a suit for the collection of a four-dollar poll-tax—the plaintiff being a road overseer. The cause was sent here by the St. Louis Court of Appeals (53 Mo. App. 632). The point to be ruled was the construction of section 7815, Revised Statutes 1889, in the chapter entitled "Roads and Highways." That section concerns the listing of able-bodied male persons between twenty-one and fifty years of age for poll-tax purposes. We retained jurisdiction on the theory the construction of the revenue laws was involved as held by the Court of Appeals.

However, in State ex rel. v. Holland, 186 Mo. 222, another poll-tax case, we declined jurisdiction. This on the theory that the only question involved was one of practice, viz., the sufficiency of the statement filed before the justice of the peace. In that case it seems there was testimony, nisi, tending to establish facts within the purview of the poll-tax law as set forth in the general statutes relating to roads and highways.

However, presently in Sone to use v. Wallendorf, 187 Mo. 1, a similar state of things was held in judgment by this court In Banc. There it was unanimously ruled that a construction of the revenue laws was involved although the case finally rode off on a construction of the general provisions of the statute relating to practice before justices of the peace.

In State ex rel. Shannon County v. Hawkins, 169 Mo. 615, jurisdiction was retained on two grounds. First, because the county was a party and, second, because the revenue laws were involved, although the provision of those laws in judgment related only to the commissions of the collector on back taxes gathered by him.

City of Stanberry v. Jordan, 145 Mo. 371, was a case relating to the collecting of city taxes. We held jurisdiction on two grounds. First, because a

constitutional question was raised; but, second, because the construction of an act concerning the assessment and collection of the revenue gave us jurisdiction.

However, in City of Hannibal *ex rel.* v. Bowman, 167 Mo. 535, it was held that the construction of a statute for the collection of taxes levied on personal property by cities organized or existing under a *special charter* does not involve the construction of the revenue laws of this State.

And in St. Joseph v. Life Insurance Co., 183 Mo. 1, where there was a successful prosecution under an ordinance of St. Joseph for doing a business without a license, the defendant was fined $50 in the police court. The cause eventually came here on the theory there was a constitutional point involved. It was held there was no such point in the case and, further, the question whether a license or occupation tax was in reality a tax or could be imposed by the city in cases where the insurance company had paid the full *ad valorem* tax imposed by section 8043, Revised Statutes 1899 (relating to the taxes of insurance companies), did not involve a construction of the revenue laws of this State.

And in State v. McNeary, 88 Mo. 143, it was held that this court had no jurisdiction in a misdemeanor case on a charge for violating the dramshop law for keeping a dramshop without a license, on the ground that it involved the construction of the revenue laws.

Morrow v. Surber, 97 Mo. 155, was this: Surber by false representations succeeded in having a warrant for less than $500 cashed by the clerk of the county treasurer of Macon county. Thereupon, Morrow, the county treasurer, sued to recover back that amount. The case turned on the statutes relating to their order of priority as registered. Statutes relating to that subject (as said heretofore) are found in the registration of warrants and their payment in

the present chapter, entitled ".Counties," under the subtitle "County Treasurers and County Warrants," article 4. This court retained jurisdiction on the theory that the construction of the revenue laws of the State was involved.

In State *ex rel.* v. Allison, 155 Mo. 325, the question in judgment was: When the fiscal year of the county commenced? If it commenced on one day the treasurer of Ray county should have paid certain warrants. If it commenced on another, he should not have paid them. The action was mandamus. It came here on appeal. We retained jurisdiction.

In State *ex rel.* v. Gawronski, 179 Mo. 549, the question was whether a motion would lie to quash an execution issued on a tax judgment which motion was grounded on the specification that a minor defendant, ten years of age, had been sued as owner of the land and the case prosecuted to judgment without the appointment of a guardian *ad litem*. It was held that this court did not have jurisdiction on the theory that a construction of the revenue laws of the State was involved.

From a review of the cases we conclude: (1) That when our jurisdiction is put upon the ground that the construction of the revenue laws of the State is involved, the law up for construction must be a State law as contradistinguished from the provisions of a special city charter; (2) that it makes no difference where the law is to be found, whether under the title of "revenue" or any other title, so long as it relates to the subject-matter of revenue; (3) that the revenue must be directly and primarily concerned, not merely indirectly or as an incident; (4) that the term "revenue law" covers and includes laws relating to the disbursement of the revenue and its preservation as well as provisions relating to the assessment, levy and collection of it; and (5) finally, that where the question in the case is merely one relating to the gen-

eral practice in circuit courts or before justices of the peace, although the case may pertain to the collection of taxes, yet the revenue laws are not involved in a constitutional sense.

(c) Looking to the County Depositary Act itself, we find that the main idea is the preservation and disbursement of the funds of the county arising from taxes or otherwise; *e. g.*, it has provisions relating to the payment of warrants. Another idea is that the county itself obtains a share in the increment of gain arising from the use of its funds by banks of deposit (Henry County v. Salmon, 201 Mo. l. c. 161, *et seq.*). In one provision the gain of the county is disposed of for road and bridge purposes (section 6819). Another provision relieves the county treasurer from liability for the funds of the county in certain contingencies.

With some doubt and hesitation, we conclude the statute under construction relates to revenue and we are somewhat strengthened in that conclusion by a ruling made In Banc, on a motion in a cause now pending in this court, Reagan v. Buford, — Mo. —. The respondents (defendants) in that case are the justices of the county court of Iron county. The case involves the construction of the County Depositary Act and relates, as does this, to the acceptance of a bid to become county depositary. The case came here from the St. Louis Court of Appeals on the theory that a construction of the revenue laws of the State was involved. A motion was made to advance. In the motion, or in the suggestions in opposition, it was contended, *arguendo,* that this court had jurisdiction. If we had no jurisdiction of the case, we had no jurisdiction of the motion, and should have refused to pass upon it. We did pass upon it by overruling it, and, by that ruling, inferentially held we had jurisdiction.

**II. Of the merits.**    There is no error in the record proper.    The petition, return and judgment are well enough.    If there is error it arose either on interlocutory motions or on the motion for a new trial and exceptions saved.    These exceptions and motions could be preserved for review only in a bill of exceptions.    In the abstract of the record, at one place, we read:    "Now come the parties hereto, as well as their respective attorneys, whereupon the court allowed said appeal, it is therefore ordered by the court  . . . .    and the respondents [appellants] be given ninety days in which to file their bill of exceptions herein."    At another place, we find the following:  "And now come the appellants, and within the time heretofore allowed by order of record, and present this, their bill of exceptions, and pray that the same may be signed, sealed and made a part of the record herein.    Which is accordingly done this, the 6th day of October, 1905.    (Signed) F. C. JOHNSTON, Judge of the McDonald Circuit Court."

Barring those two narrations, the abstract is barren of any references to a bill of exceptions.    There is not a word or an ear-mark from *a* to *izzard* by which we can determine what is in the bill or out of it, whether anything or nothing.    A court of justice does not proceed by *guessing,* and therefore an abstract of the record should show in some orderly and reasonable way that the exceptions and motions were preserved in a bill of exceptions, otherwise we cannot consider them.    Such has long been the rule in this court.    [Reno v. Fitz Jarrell, 163 Mo. 411; State v. Baty, 166 Mo. 561; Gilchrist v. Bryant, 213 Mo. 442; Thompson v. Ruddick, *ibid,* 561; Stark v. Zehnder, 204 Mo. l. c. 448; Coleman v. Roberts, 214 Mo. 634; Barham v. Shelton, *ante,* p. 66; Clay v. Union Wholesale Pub. Co., 200 Mo. l. c. 673; Groves v. Terry, 219 Mo. 595.]

We cannot consider the exceptions or motions because they are not vouched for as preserved in the bill of exceptions.

Let the judgment be affirmed. It is so ordered. All concur.