**Harold P. ROBB, M.D., Director of the Department of Mental Health of Missouri, Respondent,**

**v.**

**ESTATE of Roland Hayes BROWN, Incompetent, Mae Bryant, Guardian, Appellant.**

**No. KCD 26804.**

Missouri Court of Appeals,
Kansas City District.

Dec. 30, 1974.

Motion for Rehearing and/or Transfer
Denied Jan. 28, 1975.

Application to Transfer Denied
March 10, 1975.

Paul M. Peterson, Thomas T. Strange, Columbia, for appellant.

John C. Danforth, Atty. Gen., John C. Klaffenbach, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

In 1964, Roland Hayes Brown was charged with murder in the Circuit Court of the City of St. Louis. He pleaded not guilty by reason of mental disease or defect, and after a psychiatric examination the State accepted the plea. A judgment of acquittal was then entered which included the following provision: "It is further ordered by the Court that the care and maintenance of said defendant be taxed as

costs against the City of Saint Louis, State of Missouri."

As required by § 552.040 (all statutory references herein, unless otherwise noted, being to RSMo 1969, V.A.M.S.), Brown was then committed to State Hospital No. 1 at Fulton. In connection with Brown's admittance, the City remitted to the hospital a warrant covering expenses for the first six months. However, the City also wrote that their financial investigation just completed showed that Brown had a service connected disability rated by the Veterans' Administration at 100%, that he was under guardianship and that he had an estate of approximately $5,000. The City requested on the basis of these facts that the payment advanced by it be returned and that Brown be reclassified as a private pay patient whose care should be paid by his guardian.

The hospital superintendent acquiesced in the request by the City, returned the advance payment and made demand upon the guardian for payment of Brown's hospital care and treatment. Regular monthly payments were made by the guardian commencing December, 1964, and with some interruptions, full payment of hospital charges continued by the guardian until April, 1967. On the latter date the guardian declined to make any further payments.

On June 4, 1969, the Director of the Department of Public Health and Welfare of Missouri made claim against Brown's estate, under administration in the Probate Court of Callaway County, for $6,973, the amount of accrued hospital payments then due. Upon denial of the claim by the guardian, the claim was heard and allowed in full. The guardian duly appealed to the Circuit Court of Callaway County, where the case was heard upon a stipulation of facts. Among other items, the parties agreed that the estate was valued at the last annual settlement dated October 9, 1969, at $10,876.23, with income from the Veterans' Administration alone in the amount of $400 per month; and that the

amount of hospital charges unpaid had been certified by the Division of Mental Diseases under § 191.130 for $6,973.

The Circuit Court of Callaway County made findings of fact and conclusions of law in which the court concluded that when Brown was committed to the custody of the Director of the Division of Mental Diseases and was received by an institution within the division, he thereby became an "insane person . . . admitted into the state hospital as a patient" and that his guardian thereby became obligated to pay for his support and expenses under the provisions of § 202.250 [now § 202.240]. Pursuant to that conclusion, the court entered judgment for the claimant. The guardian appeals.

Before dealing with the merits of the case, two preliminary matters require consideration. First, the Attorney General has filed a motion to substitute Harold P. Robb, M.D., Director of the Department of Mental Health of Missouri as respondent in place of Austin Hill, Director of the Department of Public Health and Welfare. This motion is for the purpose of reflecting the transfer of power and duties under Section 9 subd. 3 of the Reorganization Act, V.A.M.S. Act 3X, 1974 (C.C.S.H.C.S. S.C.S.S.B. 1, 77th General Assembly, First Extra Session). This motion is granted under the authority of Rule 52.13(d), V.A. M.R.

Next, the Director objects to the jurisdiction of this court on the ground that this case calls for a construction of the revenue laws, jurisdiction of which is conferred by Article V, § 3 of the Missouri Constitution V.A.M.S., to the Supreme Court. As correctly pointed out by the Director, the funds claimed here if collected will be required under § 31.030 to be deposited in the State treasury and credited to the general revenue fund. However, this alone does not make this case one involving construction of the revenue laws within the constitutional provision. In order to fit that classification, the revenue

law "must be directly and primarily concerned, not merely indirect or as an incident." State ex rel. Atty. Gen. v. Adkins, 221 Mo. 112, 119 S.W. 1091, l. c. 1093 (1909); White v. Boyne, 324 Mo. 176, 23 S.W.2d 107 (1929); State v. Lauridsen, 312 S.W.2d 140 (Mo.1958); Young v. Brassfield, 223 S.W.2d 491 (Mo.1949); White v. State Social Security Commission, 345 Mo. 1046, 137 S.W.2d 569, 571 (1940).

This case, as will be shown during the course of this opinion, concerns primarily the question of costs in criminal cases where the accused is acquitted by reason of mental defect or disease. The impact upon the revenue laws is only an indirect consequence. Accordingly, jurisdiction lies in this court.

Turning now to the issues on the merits, six points on appeal are raised by the guardian, many of which overlap. Without the necessity of analyzing all of these points, it will be sufficient to discuss the single point which over-arches and is decisive of the entire case. This controlling proposition is that Brown was committed under the criminal laws and the consequences of that commitment are governed by the provisions of the criminal statutes, not those of the civil statutes.

In 1963, the Legislature completely revised the statutes of this State dealing with mental disease or defect on the part of persons charged with criminal offenses. The new code was encompassed in what is now Chapter 552. That the framers of this new code intended it to be a comprehensive treatment of the whole subject does not admit of doubt. Very shortly after the enactment of the new code, the Fournal of the Missouri Bar issue of De-

cember, 1963, was devoted to "Missouri's Mental Responsibility Law—a Symposium," for the instruction and guidance of the Missiouri bar and bench. One of the comments was that of Professor Mueller who stated at 19 Journal of the Missouri Bar, page 650:

"One of the most appealing features of this bill is the comprehensiveness of the legislative scheme. The bill covers all substantive, procedural, administrative and dispositional aspects of the topic of mental responsibility insofar as applicable to criminal proceedings."

Even more pointedly with respect to questions affecting payments for the cost of treatment, the draftsmen of the bill explained in this same symposium at page 727, in their discussion of § 552.080:

"Several statutes were scattered throughout the Revised Statutes. For example, see former Sections 546.520–546.540 and 546.623(3). It would seem much better to bring the matter of the cost of treatment and transfer into one statute. Here again the court should be given discretionary power to tax such expenses as costs."

■ As pertains to the present case, the provisions of the new law directly applicable are §§ 552.040 and 552.080, subd. 1(2). Section 552.040 provided that when a defendant is acquitted on the ground of mental disease or defect the court shall order such person committed for custody, care and treatment in a state mental hospital. Then Section 552.080, subd. 1(2) provided that the expense of that care and treatment may be taxed by the sentencing court upon application "as costs in the case."[1] And Section 552.080, subd. 2 provided for the

---

1. Section 552.080, subd. 1 was expanded and the element of discretion eliminated by amendment in 1969 (Laws of Missouri, 1969, page 577) to read that the sentencing court *shall* "order the payment of or tax as costs". This amendment which was approved July 29, 1969, has no direct application because the commitment by the Circuit Court of the City of St. Louis was in 1964, the charges here are for a period ending April, 1969, and the claim was filed in the Probate Court on June 4, 1969, all being prior to the adoption of the amendment. Nevertheless, the 1969 amendment does serve to clarify the Legislature's original intent. For a discussion of the problem sought to be met by the 1969 amendment, see State v. Siecke, 472 S.W.2d 367 (Mo. banc 1971).

levy under execution of the costs so taxed and for payment by the collecting officer to the physicians and hospital the fees and expenses so taxed.

This direction that the expenses of treatment might be taxed as costs reflects an intention to bring into operation the provisions of Chapter 550, which deal with the manner of taxing costs in criminal proceedings. Section 550.040 provides that in the case of the acquittal on charges of felony, costs shall be taxed to the State. The conclusion reasonably to be inferred is that when a defendant in a felony case is acquitted by reason of mental disease or defect, then the burden of these expenses falls upon the State.[2]

True enough, an opposite result occurred under the former statute, § 546.520, RSMo 1959, which had been in effect until 1963. However, that previous statute had been consciously repealed in 1963 in connection with the adoption of the new code, and the change in result with respect to hospital costs was not inadvertent. That this change was deliberate and purposeful is attested by the statement of the draftsmen appearing in 19 Journal of the Missouri Bar, 1. c. 728, where they specifically refer to the repeal of § 546.520 and then go on to spell out the new results from the interplay of Sessions 552.040, 552.080, and 550.020:

> "Under these statutes the state, in felony charges, . . . would be responsible to pay . . . (3) the expenses of conveyance, care and treatment of a person acquitted on the ground of mental disease or defect while in the hospital for the mentally ill . . . when the accused is either acquitted on the ground of mental disease or defect or convicted of the crime charged, if the accused is unable to pay them."

On this analysis, the burden of the hospital expenses was properly upon the State, it had no right to shift that obligation to the guardianship estate, and the judgment below was in error. The Director resists this result on several bases.

1. *Claimed distinction between costs of prosecution and costs incurred after prosecution.* First, the Director argues that "there is clearly a difference between costs of prosecution and costs incurred after prosecution which latter costs are only denominated as costs for collection purposes." If this quoted argument is correctly understood, the Director contends that the expenses of hospitalization after acquittal are not costs in the usual sense of the word and therefore are not subject to Chapter 550. No basis can be discerned in the statutory language for the interpretation suggested by the Director. Costs of treatment after an acquittal cannot in their very nature accrue until after acquittal, or in the Director's language, "after prosecution." Yet § 552.080, subd. 1(2) specifically provides that these very expenses are among those which are to be taxed "as costs."

Furthermore, the distinction suggested by the Director runs contrary to the underlying statutory scheme by which jurisdiction continues in the sentencing court for many purposes even after commitment. For example, § 552.040, subd. 4 grants jurisdiction to the sentencing court to consider applications for release of the inmate after restoration of mental capacity. So also, § 552.050 covers the situation where a prisoner becomes mentally incapacitated after commencing his sentence; and in this situation the sentencing court is specifically granted the authority under § 552.080, subd. 1(2) to allow and tax the costs of hospital treatment as costs in the original criminal case.

---

2. This conclusion gains support from the 1969 amendment to Section 552.080, subd. 2 which added a provision that "if a county has paid expenses or fees as provided in subsection 1 of this section, the county shall be reimbursed for such expenses and fees when the state or defendant is liable for costs under the provisions of chapter 550, RSMo."

It can be agreed that costs under § 552.-080 are intended to have a rather unique character, distinctly different from ordinary costs. However, this distinctiveness colors equally those expenses incurred before acquittal as well as those incurred afterwards. The basis for difference in treatment from ordinary costs lies not in that time element, but rather in the practical necessity of not deferring payment until final disposition of the case, as is normally required. This matter is fully considered in State v. Siecke, 472 S.W.2d 367 (Mo. banc 1971).

■ *2. Claimed applicability of § 202.-250.* The Director next argues that Chapter 552 must be read as incorporating or at least subject to amplification by § 202.250 [now § 202.240]. This section provides generally that the estate of a solvent inmate committed to a state hospital shall bear the expense of his care and treatment, and this section was relied upon by the trial court as the basis of imposition of liability in this case. The difficulty with this approach is that Chapter 202 deals with civil commitment, as contrasted to criminal commitments which are subject to the distinctly different Chapter 552.

The sharp separation of these two completely different routes for commitment has recently been recognized and emphasized by the Missouri Supreme Court En Banc in State v. Kee, 510 S.W.2d 477, 1. c. 480 (1974), where the distinction is explicitly stated as follows:

" 'Criminal commitment' proceedings as used herein mean those proceedings under which a person, who has been charged with a criminal offense and who asserts he is not liable to criminal punishment because, at the time of the offense, he suffered from a mental disease or defect excluding responsibility, and who, after being acquitted upon that ground, is committed to the division of mental diseases. In Missouri these proceedings are governed generally by chapter 552 and in particular sections 552.030 and 552.040. 'Civil commitment' proceedings are governed generally by sections 202.783 through 202.875 and are different from the provisions applicable to criminal commitments.

\*     \*     \*     \*     \*     \*

"Thus the difference between civil and criminal commitments in Missouri is principally based upon the fact that in the former there need be no prior criminal act committed whereas in the latter it is essential that the defendant have committed a prior criminal act."

It was upon the basis of this very distinction that the court upheld mandatory commitment under § 552.040, even though such a commitment is permitted without special hearing and even though the inmate cannot be released without his undertaking the burden of proof that he no longer has a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of the law.

Still further, the Director's contention that Section 202.250 [now 202.240] was incorporated by reference into Chapter 552 is inconsistent with the fact that the Legislature in § 552.040, subd. 3 specifically listed those sections of Chapter 202 which it wanted to be applicable to accused persons acquitted of crime because of mental irresponsibility under § 552.040, and Section 202.250 [now 202.240] was not included in that list. Accordingly, logic rejects the Director's argument under consideration.

Still further, an incorporation into § 552.040 of § 202.250 [now 202.240] would produce an inappropriate result. Section 202.240 provides that if hospital charges for a pay patient are not paid by the guardian of his estate, then "upon a failure thereof, after reasonable delay, the superintendent may discharge such patient in a manner as provided by chapter 31, RSMo."

Obviously the Legislature did not mean and the courts cannot sanction a procedure under which a guardian could accomplish a release of a dangerous inmate simply by declining to pay the charges billed by the hospital.

■ 3. *Claimed applicability of Section 191.130.* Next, the Director argues that the provision for the taxation of hospital expenses as court costs is merely one alternative method available to the State for collection. In this respect, the Director relies upon subsection 4 of § 552.080 which states that "[t]he method of collecting the costs and expenses herein provided . . . shall not be exclusive and same may be collected in any other manner provided by law." The Director claims that the provisions of § 191.130 is such an "other manner provided by law."

No quarrel can be found with the statement that § 191.130 does provide for the collection by the Director of monies due for care and treatment in a hospital. However, the manner of collecting is not reached until it can be demonstrated that there is a debt due which is subject to collection. Section 191.130 does not purport to create any obligation on the estate. The sole source of any obligation to pay for the expenses of this hospital care must be found in § 552.080. The Director points to nothing in that Section, or for that matter anywhere in Chapter 552, authorizing the imposition of these hospital costs upon the guardian and of course the Circuit Court of the City of St. Louis made no order attempting to do so.

■ 4. *Claim of unconstitutionality.* The Director next contends that if § 552.080 is construed so as to excuse non-payment by the guardian, then the statute violates Missouri Constitution, Section 38(a), Article III, as constituting grants and gifts to persons by authorizing free hospital treatment to individuals of means. If this proposition were seriously debatable, this court would be deprived of jurisdiction since the construction of the Constitution rests exclusively in the Supreme Court. However, this argument must be considered as merely colorable. Brown has been committed to the state hospital involuntarily, and the fundamental basis for justifying this involuntary confinement is the interest and obligation of the State to protect the public against dangerous individuals. This is well articulated in the comments to Tentative Draft No. 4 to the Model Penal Code, American Law Institute, which the Missouri Code follows in large part. This matter is discussed at page 199 of Tentative Draft No. 4 in the following terms:

> "The provision for automatic commitment is in accordance with the practice in England and a minority of American jurisdictions. . . . It seems preferable to make dangerousness the criterion for continued custody, rather than to provide that the committed person may be discharged or released when restored to sanity as defined by the mental hygiene laws. Although his mental disease may have greatly improved, such a person may still be dangerous because of factors in his personality and background other than mental disease. Also, such a standard provides a possible means for the control of the occasional defendant who may be quite dangerous but who successfully feigned mental disease to gain an acquittal."

This rationale has been adopted by the Missouri Supreme Court En Banc as the justification for mandatory commitment under these circumstances. In State v. Kee, 510 S.W.2d 477, 1. c. 480 (Mo. banc 1974) where the matter is put thus:

> "Society does not condone robbery or any other criminal act whether committed by a sane or insane person but does relieve the insane of criminal punishment. When this type of conduct is engaged in as a consequence of a mental defect, it is reasonable to believe that it may be repeated until the defendant is cured. This is so because it is the es-

**736**

sence of the defense of mental defect that the defendant did not appreciate that what he did was wrong or, if he did know it was wrong, he was incapable of conforming to the requirements of law."

It is for this reason of protecting the public that our courts permit a by-pass of a person's usual right to a hearing in connection with his commitment, with the burden of proof being on the one seeking commitment. Clearly this is not a case where the State is making a simple gift of medical services.

5. *Claimed applicability of out-state authority.* Finally, the Director relies upon cases from Illinois, Connecticut and Pennsylvania in which the statutes of those respective states were interpreted to authorize collection from the inmate's estate of the costs of his hospital treatment after he had been committed to a state hospital following acquittal because of mental irresponsibility. Department of Mental Health v. Pauling, 47 Ill.2d 269, 265 N.E.2d 159 (1970); In re Estate of Schneider, 50 Ill. 2d 152, 277 N.E.2d 870 (1971); State v. Kosiorek, 5 Conn.Cir. 542, 259 A.2d 151 (1969); Commonwealth v. Evans, 253 Pa. 524, 98 A. 722 (1916). Not cited and holding to the contrary is Ollerton v. Diamenti, 521 P.2d 899 (Utah 1974).

None of these cases from other jurisdictions are helpful in construing the special statutes in Missouri. The statutes of this State have their own background and interrelationship and must be read with the gloss imposed by decisions of this State.

In summary, any obligation by the guardianship estate to pay for these hospital expenses must be found within the terms of § 552.080, as that statute stood in June, 1969. Section 202.250 [now 202.240] has no application. Properly construed, § 552.080 does not authorize imposition of these expenses upon the estate. In holding that authority for this is conferred by Section 202.240, the trial court erred.

Reversed.

All concur.

