In re ESTATE of J. Roger DeWITT.

Mary M. De WITT, Executor, Appellant,

v.

STATE of Missouri, Respondent.

No. WD30753.

Missouri Court of Appeals,
Western District.

Dec. 3, 1979.

Rufus Burrus, W. Raleigh Gough, Independence, for appellant.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

DIXON, Presiding Judge.

This appeal involves the assessment of inheritance tax.

The Circuit Court of Cole County affirmed the order of the Probate Court which approved the Report of the Inheritance Tax Appraiser in the estate of J. Roger DeWitt and assessed a total tax of $22,756.07. The appraiser had determined that the entire marital trust, as set up in decedent's will, should be subject to inheritance tax against the widow because of her right to receive the income from the trust for life, along with a general power of appointment to dispose of the assets of the

trust on her death by will. In addition, the appraiser assumed, for purposes of assessment of inheritance tax, that the residuary estate set up in the decedent's will was not sufficient to pay various bequests. This affected the amount of his assessments by elimination of a charitable bequest. Exceptions were filed by the Executrix who claimed that the tax assessment should only amount to $16,028.34.

Both the appellant, Executrix Mary DeWitt, and the respondent, State of Missouri, agree that the issues raised herein require the construction of the provisions of Chapter 145 of the Revised Statutes of Missouri, specifically: §§ 145.010; 145.020; 145.030; and 145.200 RSMo 1978. For that reason, the instant appeal was filed in the Supreme Court of Missouri pursuant to Article V, § 3 of the Constitution of Missouri placing exclusive appellate jurisdiction in that court where construction of revenue laws is involved. However, this cause was transferred by order of the Supreme Court to the Court of Appeals, Western District, on February 16, 1979.

The threshold issue to be determined by this court is whether this case is one which requires the construction of revenue laws so as to invoke the exclusive appellate jurisdiction of the Supreme Court, or whether it is a question of application of those statutes to the facts thus vesting jurisdiction of the issues in this court.

J. Roger DeWitt was a resident of Jackson County who died on November 20, 1968. His will divided his estate into two trusts, a "marital trust" and a "residuary trust." Under the "marital trust," his widow, Mary M. DeWitt (the executrix) was given a life estate beneficial interest in that proportion of his entire estate which, with other provisions for his wife by will or otherwise, would constitute one-half of his entire estate for federal estate tax purposes. In addition, the will provided that upon his wife's death, the trustee should pay over and distribute the principal of the trust, with all undistributed net income "to or for the benefit of such person or persons or corporation or corporations, or the estate of my wife, in such amounts or proportions, and in such lawful interests or estates, whether absolute or in trust, as my said wife may appoint by her last will and testament."

The will further provided that, if for any reason such power of appointment is not effectively exercised by his wife, then such estate shall be added to his "residuary" estate and distributed according to Article V of his will.

As to the "residuary" trust, the will provides in Article V that all the income from that trust be paid to his wife as long as she lives; upon her death all such income be paid to his brother, Robert A. DeWitt, for his life; and upon the death of his brother, the principal and all undistributed income be paid and distributed to numerous charitable institutions and individuals, including the "Ruby E. Simmons Trust" and the "DeWitt Family Trust;" and a bequest to a "Cemetery Maintenance Fund," the income from which was to be used for flowers on the graves of the DeWitt and Mercer families.

Article XI of the Will provides for invasions of principal to be made first from the "marital trust" estate or, if that is not sufficient, out of the "residuary trust" estate. The power to invade is limited to sums in the discretion of the trustee for the wife's care, comfort, and maintenance considering her previous standard of living.

The inheritance tax report listed total assets of $1,764,040.62, deductions of $332,859.04, and a net estate of $1,431,181.58. Of this amount, the sum of $1,005,946.76 was assessed as the value of the widow's interest and after allowing exemptions, a tax of $5,900.57 was assessed against the net amount thereof. This amount of her taxable interest was arrived at by adding the full amount of the "marital trust" estate to the appraised value of the widow's life estate in the "residuary trust" estate, and adding thereto the value of the club membership in the amount of $600.00.

The report further found that the "residuary trust" estate would not be sufficient to pay all the bequests enumerated under

Article V of the Will, hence, instead of receiving the amounts named in the Will, each of these beneficiaries would receive an "abated amount," approximately 64% of the amounts named in the Will. On the basis of this finding, the report found that there would be nothing left for the ultimate residuary bequest to the City of Independence for a community building to be known as "DeWitt Memorial Hall."

 It has long been the rule in Missouri that the first duty of a court of appeals is to determine whether or not it has jurisdiction, even if its jurisdiction has not been challenged. *Kansas City v. Howe,* 416 S.W.2d 683, 686 (Mo.App.1967), and *In Re Estate of Youngblood,* 447 S.W.2d 824, 826 (Mo.App.1969). It is also the rule that a transfer ordered from the Supreme Court to the Court of Appeals is not an adjudication, and the Court of Appeals is not precluded from reexamining the issue of jurisdiction and retransferring the case back to the Supreme Court if it determines that a substantial question of constitutional construction is presented. *Schmidt v. Morival Farms,* 240 S.W.2d 952, 955 (Mo.1951); *Collector of Revenue for City of St. Louis v. Parcels of Land Encumbered With Delinquent Tax Liens,* 566 S.W.2d 475, 476 (Mo. 1978).

The court in *Ewing v. City of Springfield,* 449 S.W.2d 681, 684 (Mo.App.1970) defined the task of "construction" as including a determination of the "meaning and proper effect"[1] of the United States and Missouri Constitutions when it determined that the alleged constitutional issue presented was really nothing more than a contention that the zoning law in question had been incorrectly applied. Other writers have elaborated on this principle:

" 'Construction' may be technically distinguished from 'interpretation' but in practice the courts use these terms interchangeably. To the courts, ' " 'the term [construction] signifies determining the meaning and proper effect of language by a consideration of the subject-matter

and attendant circumstances in connection with the words employed.' " ' Therefore, the process of construction includes but does not end with the interpretation of the express language of a provision, since the court looks to the accompanying circumstances as well as the express language. This subtle distinction has been made in dicta but has never been the basis for a transfer to the court of appeals.

The courts have attempted to distinguish an *application* from a *construction* of the constitution; when the conclusion is reached that only the former is involved, the supreme court has no jurisdiction. 'Construction' may be defined as the ascertainment of the meaning attached by the drafters to the provision, while 'application' is the determination whether the facts of a case are within the scope of this meaning. However, it is not always easy to distinguish between the ascertainment of the drafters' intent and the application of the constitutional provision." (Footnotes omitted). 1964 Wash.U.L.Q. 425, 442–43.

The problems concerning revenue law jurisdiction revolve around two basic propositions articulated in *State ex rel. Attorney General v. Adkins,* 221 Mo. 112, 118–19, 119 S.W. 1091, 1093 (1909), transf'd from 119 Mo.App. 396, 100 S.W. 661 (1906):

"[1] [T]hat the revenue [law] must be directly and primarily concerned, not merely indirectly or as an incident; . . [2] where the question in the case is merely one relating to the general practice in circuit courts or before justices of the peace, although the case may pertain to the collection of taxes, yet . . . the revenue laws are not involved in a constitutional sense."

*Adkins* also provides insight into which laws have been characterized as revenue laws:

"[I]t makes no difference where the law is to be found, whether under the title of 'revenue' or any other title, so long as it relates to the subject-matter of revenue;

1. *Citing E. B. Jones Motor Co. v. Industrial Commission,* 298 S.W.2d 407, 410 (Mo.1957),

and *City of Olivette v. Graeler,* 329 S.W.2d 275, 279 (Mo.App.1959).

. . . the term 'revenue law' covers and includes laws relating to the disbursement of the revenue and its preservation, as well as provisions relating to assessment, levy, and collection of it . . .." *Id.* at 118 and 119 S.W. at 1093.

Estate of *Osterloh v. Carpenter,* 337 S.W.2d 942 (Mo.1960) involved the question of whether securities, purchased by the decedent within two years prior to her death and issued jointly in her name and the names of her sister, niece and nephews, were subject to taxation as being a transfer made in contemplation of death pursuant to § 145.020, subd. 1(3) RSMo 1949. The court determined that it had jurisdiction of the appeal because a construction of the revenue laws of Missouri was involved.

*Osterloh* provides not only precedent for categorizing § 145.020 as a revenue law but also provides an example for the two other considerations expressed in *Adkins, supra:* whether the revenue law is directly involved in the resolution of the case and whether it is necessary for the court to "construe" that statute in order to reach the resolution of the litigation.

As to the issue of "directness," Judge Wasserstrom recently wrote for the court in *Robb v. Estate of Brown,* 518 S.W.2d 729, 732 (Mo.App.1974) that the issue in that case concerned primarily the question of costs in criminal cases where the accused was acquitted by reason of mental disease or defect and the impact upon the revenue laws was only an indirect consequence. Accordingly, jurisdiction was in the court of appeals.

Where the meanings of certain terms in the statutory provision were disputed, the Supreme Court has assumed jurisdiction. *Transport Rentals, Inc. v. Carpenter,* 325 S.W.2d 745 (Mo.1959). This is also the issue in *Osterloh.* It was necessary to determine whether the securities in issue were within the definitions provided in § 145.010. Only by a direct resolution of the meaning of the statute could the issues between the parties be resolved. Thus, the Supreme Court had jurisdiction. *See also, In Re Estate of Hough,* 457 S.W.2d 687 (Mo.1970); *In re Estate of Armack v. State,* 561 S.W.2d 109 (Mo.banc 1978). The issue that must be resolved, then, is whether the facts of this case and the contentions made raise an issue of construction.

The relevant statutes in pertinent part are:

"145.010. Definitions

. . . . .

4. The word 'transfer' as used in this chapter shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift or appointment in the manner herein described.

145.020. Property subject to tax—exemptions

1. A tax is hereby imposed upon the transfer of any property, real, personal, or mixed, or any interest therein or income therefrom in trust or otherwise, to persons, institutions, associations or corporations, not herein exempted, in the following cases:

(1) When the transfer, by will or the intestate laws, is from any person who is a resident of this state at the time of his death.

. . . . .

2. Such tax shall be imposed when any person, association, institution or corporation actually comes into the possession and enjoyment of the property, interest therein or income therefrom.

. . . . .

145.030. Exercise of power of appointment deemed a transfer—tax determined by clear market value

Whenever any person or corporation shall exercise the power of appointment derived from any disposition of property made either before or after the passage of this law, such appointment when made shall be deemed a transfer taxable under the provisions of this law in the same manner as though the property to which

said appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by the donor by will; and whenever any person or corporation possessing such power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this law shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power relates had succeeded thereto by a will of the donee of the power failing to exercise such power taking effect at the time of such omission or failure. The tax so imposed shall be determined by the clear market value of such property at the rate herein prescribed and only upon the excess over the exemptions herein made."

First, Mary DeWitt, the executrix, argues that the testamentary power of appointment given to her as the widow of the deceased Roger DeWitt should not have been taxed in the estate of the grantor because the statutes cited above do not authorize it. More specifically she argues that § 145.010 implies an "appointment" is something distinct from a devise, bequest, deed, etc. and § 145.030 exclusively deals with appointments and can be read as referring only to the *exercise* of a power of appointment and not its *creation*. In order words, when the statute says "such appointment (the exercise of the power) when made shall be deemed a transfer" it implies that until the power is exercised, there is no transfer and, therefore, there can be no tax until there is a transfer.

Further, she argues that by the use of the words "as though" in § 145.030, the legislature manifested its intent to impose a tax on the theory that the appointee (the person finally deriving beneficial enjoyment) does not take from the original owner, but takes from the *exercise* of the power by the donee of the power and, therefore, such a transfer is only taxable in the estate of the donee of the power.

Thus, the mere possession of a power of appointment is not taxable as against the "donee" of the power because § 145.020(2) implies an intent to tax only a *beneficial* interest which would lie with the presently unknown appointees.

The second argument made relates to § 145.200 which reads as follows:

"145.200. Valuation of life estates—tax due when—election by beneficiary— bond

When any property, interest therein or income therefrom belonging to any estate in course of administration, shall pass or be limited for the life of another or for a term of years, or to terminate on expiration of a certain period, the value of property at the date of death so passing shall be determined by appraisal for the purpose of taxes under this chapter immediately after the death of the decedent and the value of said life estate, term of years or period of limitation, shall be valued according to mortality tables, using the interest rate or income rate of five per cent, and the value of the remainder in said property so limited shall be ascertained by deducting the value of the life estate, term of years or period of limitation from the clear market value of the property so limited and the tax on the transfer of the separate estate or estates, remainder or remainders or interest shall be immediately due and payable, to the director of revenue together with interest thereon and said tax shall accrue as provided in section 145.110 and remain a lien upon the entire property until paid; . . . ".

Mary DeWitt argues that this statute says the valuation of the remainder of the "residuary trust" estate is to be determined by deducting the value of the preceding life estates so the remainder is to be valued at $550,878.55 (the amount of the residuary trust) less the value of Mrs. DeWitt's life estate which is $179,613.94 and the value of the testator's brother's life estate which is $97,946.21 leaving a *present* value of $273,318.40. This, she argues, is the present

value of the right to receive an estate of $550,878.55 at some time in the future; and the legacies of Roger Dewitt's estate should not be taxed on the basis of the amounts they will *ultimately* receive, but on the basis of their *present value*, at the date of death of Mr. DeWitt. This would leave an amount great enough to cover a portion of the charitable bequest to the City of Independence for "DeWitt Memorial Hall" and reduce the total taxes.

As to the method of assessment under § 145.200, the attorney general argues that the statute requires the appraiser to determine the life estate on the basis of the interest or income rate of 5% and mortality tables. Once this is done, it is subtracted from the balance in order to determine the value of the remainder which will pass after the expiration of the life interests. There is no provision in the statutes for basing the tax on the present value of the future estates. According to the attorney general and without citation of authority, the state assumes that the provisions of the will are to be applied to the taxable value to exclude the bequest to the City of Independence.

The case of *In Re Estate of Tompkins v. Carpenter*, 341 S.W.2d 866 (Mo.1960) is a case which comes close to dealing with the first issue raised by the Executrix here, but there are some significant differences. The facts in *Tompkins* are different from the instant case in that the timing of the suit in relation to the course of events raises an issue which is not directly dealt with in *Tompkins*.

The *Tompkins* court held that paying taxes as a contingent remainderman is not the same thing as paying a tax for the privilege of receiving the same property in a different capacity. The ultimate beneficiaries received the property as appointees of the donee of the power of appointment and not from the donor of the power.

In the instant case, plaintiff in effect construes the statutes in question and the holding in *Tompkins* to mean that in a situation where the exercise of a power of appointment is at a time after the death of the donor of the power but before the exercise of the power by the donee, § 145.030 controls *exclusively* and provides for taxation *only* in the estate of the donee at a time when the power is exercised (which in this case would be at the death of Mrs. DeWitt since the power is testamentary).

Thus, the first issue raised requires a determination initially whether § 145.020 is applicable in light of the facts so as to justify the imposition of the tax in J. Roger DeWitt's estate. If § 145.020 is controlling, then the questions raised by the executrix as to § 145.030 will be rendered moot. The issue ultimately is whether a general power of appointment is an interest in property coming into the possession and enjoyment of Mrs. DeWitt under § 145.020 or whether the legislature intended for § 145.030 to exclusively control taxation of powers of appointment.

■ There does not appear to be a direct answer to the question posed, but the following general rules are applicable. The Missouri inheritance tax is considered a tax on the right to transfer property after death, *In re Barnay's Estate*, 344 Mo. 135, 126 S.W.2d 209 (1939) and, therefore, the incidence of the tax falls upon the recipient of the property. *In re Rosling's Estate*, 337 Mo. 544, 85 S.W.2d 495 (banc 1935); *In Re Costello's Estate*, 338 Mo. 673, 92 S.W.2d 723 (banc 1936).

The case of *In Re Costello's Estate* provides precedent for the proposition that even though the legatee dies before distribution, the property bequeathed to her was subject to the inheritance tax both on transfer from the original testator and on transfer from the deceased legatee (This case was decided under § 570 RS 1929, a predecessor to § 145.020. It still contains, however, the critical language of "an interest therein" although it was the language of "possession and enjoyment" of subsection 2 which was really in question in *Costello*). It was in *Costello* that the court construed the words "possession and enjoyment" to mean "control" when it justified imposition of the tax in this manner:

"Mrs. Robison had a vested interest in her share of James Costello's property, subject to administration and lawful charges. She shared in any income from the property. Furthermore, she enjoyed the privilege of transferring the property by will to her daughters. We think she actually came into the enjoyment of the property within the meaning of the act." Id. at .678–679 and 92 S.W.2d at 726.

The court in *Tompkins, supra* at 873, infers that a power of appointment is taxable to the widow in this case at this time in that the court recognizes that §§ 145.010 *et seq.* and 145.030 RSMo refer to two different "decedents" and that it is *not* only the donor of the power of appointment who is included in the statute.

Based on this authority, a question is presented concerning the construction of the statutes. If this were the only issue in the instant case, the question of proper jurisdiction would be a close one. The second issue raised as to the computation of the tax, however, raises an issue of construction that resolves the issue of jurisdiction.

Some reiteration of the facts will bring the issue into focus. The issue arises under the provisions of the nonmarital trust. The executrix had a life estate in this trust, and Roger DeWitt's brother had a succeeding life estate. After the death of the second life tenant, the remaining trust estate was to be distributed to specified legatees in specified amounts. After the payment of these specific legacies, the residue and remainder of the property was to be paid to the City of Independence for the purpose of building a community service building to be known as the DeWitt Memorial Hall.

The parties do not disagree with respect to determining the amount of money to which the inheritance tax is to apply, nor to the calculations of value of the successive life estates. They agree that the value to be attributed to Mary DeWitt's life estate is $179,613.94, and the value to be attributed to the successive life estate is $97,946.21. They likewise agree that the net taxable value of the nonmarital trust is $550,878.55,

leaving $273,318.40 to be taxed to the remainder interests.

When the inheritance tax was calculated, the appraiser applied the provisions of the will to the remaining value to be taxed by calculating the total value of the specific bequests of some $400,000. The appraiser then concluded that no amount would be remaining for the nonspecific remainder interest bequeathed to the City of Independence. Since the specific bequests exceeded the $273,318.40 remaining value to be taxed in the DeWitt estate, the inheritance tax appraiser reduced proportionately the interests of each of the specific legatees and then applied to that reduced interest the applicable rate for each of the beneficiaries. This resulted in an increased tax to the beneficiaries because no portion of the remaining value of the estate taxed to the beneficiaries after the life estates was attributed to the charitable gift to the City of Independence.

The position of the executrix is that although the amount to be taxed is the $273,318.40 remaining after the taxation to the successive life beneficiaries of the present value of their life estates, the appraiser erred in excluding any assignment of present value to the gift to Independence. The executrix does not agree that the provisions of the will should be applied literally to the $273,318.40 to provide for no payment to the charitable beneficiary. It is argued with some force that a determination of the amount to be received by the beneficiaries by this method is wholly artificial since, assuming a normal income to the trust estate, the life estates will not exhaust the corpus of the estate and, absent some extreme deflation of the values, it is entirely possible that the charitable gift to the City of Independence may constitute well in excess of $100,000 when it is actually distributed. As best the argument of the executrix may be understood as to her approach to this scheme of taxation, it is that the present value should be calculated as to each bequest specific in nature and thus leave funds which would be paid to the City of Independence and also reduce the amount of the tax.

This is not, however, the only alternative available to determine the tax due. The provisions of the trust could be applied to the gross amount of the estate to determine the amount each legatee would be entitled to at this time if the life estates did not intervene. This amount would then be translated to a percentage of the total amount distributed under such an assumption and then the tax levied to each beneficiary on the assumption that the taxable value of the interest would be the percentage of the total estate received times the taxable value of $273,318.40 times the applicable percentage rate. This would, of course, result in a portion of the $273,318.40 being exempt from taxation and would result in a lessening of the inheritance tax falling upon the other beneficiaries to the estate.

There is no specific and direct language in § 145.200 which addresses the peculiar problem posed by the circumstances of this case. Nor has there been any case law in Missouri construing and applying the statute in such circumstances.[2]

The applicable language of the statute is as follows: "[T]he tax on the transfer of the separate estate or estates, remainder or remainders or interest shall be immediately due and payable, to the director of revenue together with interest thereon . . . ." The method employed by the inheritance tax appraiser and supported by the attorney general in this court has implicit within it an assumption that nowhere appears in the statutory language. That assumption is that the *language of the will* will be applied to the artificially contrived amount available for tax to determine the value of the interests to be taxed. One of the patent difficulties with this approach to the construction of the statute can be demonstrated by assuming all of the facts of the instant case except to assume that the final residuary bequest was not to a charitable organization but to an individual who would ordinarily be liable for inheritance tax. If that were the case, then a person who is plainly a transferee under the provisions of the will and the statute would pay no tax.

On the other hand, if the construction argued by the executrix were adopted in such an assumed instance, the tax would be ratably borne by all who owed a transfer tax. So, too, if it be assumed that a will provided for a large specific bequest to a charity and the residue of the estate to a person who was subject to the inheritance tax, then in those circumstances a tax again might be avoided by a person who is subject to the inheritance tax. To illustrate this latter case, if it be assumed that the present value of a decedent's estate before subtraction of the life estate was $500,000, the life estate were valued at $100,000, and the remaining value to be taxed in the decedent's estate to the beneficiaries thereof is thus $400,000, and the will provided for a $400,000 specific legacy to the charitable institution and residue to an individual, there would then be distributable at the death of the life tenant $100,000 to a beneficiary subject to the inheritance tax. But this beneficiary would have paid no tax, for, under the theory adopted by the attorney general, the specific legacy to the charity would exhaust the fund available for a taxation, and no fund would be assessed against the residuary beneficiary who is subject to tax.

The critical language "tax on the transfer" must be construed with the language, "separate estate or estates, remainder or remainders or interest," to determine the statutory intent in the computation of the tax. Where computation of a tax requires construction of a revenue law, the jurisdiction of the appeal is in the Supreme Court. *In Re Estate of Armack, supra* at 111–12. The language of the specific statute, § 145.200 RSMo 1978, gives no clear or even partial answer to the dilemma posed by these facts. The construction of the language in the light of the facts of this case will require judicial construction of the statute in the light of the whole statutory scheme of inheritance taxation. In that

**2.** 12 CSR 10–8.110, the applicable regulation, does not cover the issue nor do the examples for the calculation of the tax found in Section 12.46 Missouri Estate Administration, 2nd Ed.

connection, the fact that § 145.240(2) provides for tax at the lowest rate where contingencies affect the remainder interest and which provides for collection at a later date if the contingencies when occurring create a situation where a higher tax is due, may by implication provide a basis for a construction which would adopt a method of computation different than the appraiser used in the instant case.

■ The issue presented requires specific interpretation and construction of § 145.200 RSMo 1978. The jurisdiction of this appeal is clearly lodged in the Supreme Court of Missouri, and the cause is therefore transferred to the Supreme Court of Missouri.

All concur.