**STATE of Missouri ex rel. BRADY MOTOR-FRATE, INC., a corporation, and Bruce Motor Freight, Inc., a corporation, Appellants-Respondents,**

v.

**STATE TAX COMMISSION, State of Missouri, Respondent-Appellant.**

**No. 58378.**

Supreme Court of Missouri, Division Two.

Dec. 16, 1974.

**134**

Hendren & Andrae, John E. Burruss, Jr., Jefferson City, for appellants-respondents.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent-appellant.

HOUSER, Commissioner.

Brady Motorfrate, Inc. and Bruce Motor Freight, Inc., interstate motor carriers based in Iowa, filed with Missouri Department of Revenue claims for refund of Missouri license fees allegedly overpaid for the years 1968 and 1969 in the aggregate sum of $33,308.33. Later similar claims for the years 1966 and 1967, aggregating $41,963.41, were filed by them. The Director of Revenue denied all claims. The State Tax Commission affirmed the ruling. The carriers then filed a petition for judicial review in circuit court which court reversed the rulings as to the 1968 and 1969 claims, holding that the wrong formula for calculating fees had been employed, and affirmed the denial of the 1966 and 1967 claims on the basis of the statute of limitations. The State Tax Commission appeals from the order of reversal. The carriers appeal from the order of affirmance. This Court has jurisdiction because a construction of the revenue laws of this state is involved.

### The 1968 and 1969 Claims

In November, 1959, pursuant to the provisions of what is now § 301.277, RSMo 1969, V.A.M.S., the Missouri Highway Reciprocity Commission entered into a Vehicle Registration Proration and Reciprocity agreement with sixteen states, the purpose of which was to permit the contracting states to allow owners of fleets of commercial vehicles operating in two or more states to prorate the registration of their vehicles in each state in which the fleets operate *on the basis of the proportion of miles operated within such state to total fleet miles*. The agreement provided for the computation of annual fees and taxes by the *total miles* formula for carriers such as Brady and Bruce. Total fleet miles is defined in § 52 of the agreement as the total miles operated by the fleet in the contracting state, in all other contracting states, in other states having proportionate registration provisions, states with which such contracting states have

reciprocity, and such other states as the administrator determines should be included under the circumstances in order to protect or promote the interest of his state, "except that in States having laws requiring proration on the basis of a different determination of total fleet miles, total fleet miles shall be determined on such basis."

The State of Iowa breached the agreement, acting unilaterally by permitting the use of another method of calculation known as the *compact miles* formula, under which a ratio is determined by comparing the miles operated by the fleet in the licensing state to the miles operated in the other states which are parties to the agreement, thus ignoring the factor of total miles operated by the fleet as defined in the agreement. The result was to increase the licensing state's percentage and thus to increase the dollar amount the carrier was required to pay for license fees.

When Iowa applied only compact miles in computing its proration percentage the Missouri Highway Reciprocity Commission decided "to do the same to their (Iowa's) carriers to try and bring them back in line with the other states." Accordingly, for the years 1966–1969, both inclusive, Missouri adopted the compact miles formula in calculating the fees charged Iowa-based carriers. As a result of this change the two Iowa-based carriers, Brady and Bruce, were required to pay additional license fees aggregating $41,963.41 for the years 1966 and 1967 and $33,308.33 for the years 1968 and 1969. On January 6, 1970 Brady and Bruce filed claims for refund for 1968 and 1969 and on March 31, 1970 filed claims for refund for 1966 and 1967, in the above stated amounts, respectively, these figures representing the difference between computations under the compact miles and total miles formulae.

The issue is whether the Missouri Highway Reciprocity Commission had authority to compute and assess registration fees

against Brady and Bruce on the compact miles formula.

The State Tax Commission seeks to justify its action on the basis of subsection 1 of par. 1 of § 301.277, RSMo 1969, V.A. M.S., which follows:

"1. The commission may negotiate and enter into reciprocal agreements or arrangements with other states, the District of Columbia, territories and possessions of the United States, and foreign countries as follows:

(1) To exempt, either wholly or partially, under such terms, conditions and restrictions as it deems proper, motor vehicles and trailers licensed in other states, the District of Columbia, territories and possessions of the United States, and foreign countries or political subdivisions thereof wherein the owner is a resident, from any or all registration fees, as provided by law, but any exemption afforded hereunder shall be extended to owners whose vehicles are duly licensed in the state of their residence only to the extent that substantially equivalent exemptions are extended by that state to vehicles which are duly licensed in this state."

We are urged to rule that the conditions, restrictions and limitations upon the powers of the reciprocity commission contained in the above subsection mandatorily required the commission to deny exemptions to fleet owners based in states that do not afford similar exemptions to vehicles registered in Missouri—that is, called upon the commission to take steps to insure that Missouri-based vehicles were not "disadvantaged" by the actions of other states. It is further proposed that the subsection "by its express terms provides for the modification of the compact upon the occurrence of a stipulated event—the failure of another contracting state to treat Missouri carriers in a manner identical to Missouri's treatment of that state's carriers." Citing Steel Haulers, Inc. v. United States, 316

F.Supp. 707 (W.D.Mo.1970), aff'd 440 F. 2d 1176 (8th Cir. 1971); Berger v. McBride & Son Builders, Inc., 447 S.W.2d 18 (Mo. App.1969); Sharp v. Interstate Motor Freight System, 442 S.W.2d 939 (Mo. banc 1969); 1 Am.Jur.2d Administrative Law, §§ 92 et seq., and 81 C.J.S. States § 10, p. 905, the commission takes the position that an administrative agency may not act in excess of the powers and restrictions delegated to and imposed upon it by the legislative body; that the agreement entered into by the agency must be consistent with the enabling statute under which it is made, and that the agreement will be valid and in force only to the extent that it does not conflict with the state laws (with all of which we readily agree), and that when Iowa breached the total miles formula and applied the compact miles formula its action automatically modified the agreement and authorized the Missouri reciprocity commission to ignore the former and apply the latter formula to Iowa-based carriers (with which we thoroughly disagree).

■ We construe the limitation contained in the last clause of the subsection to relate to the *formation* of the contract; that it governs what the commission may not do in negotiating and entering into a reciprocal agreement with other states. It relates to the subject-matter and content of the contract—the scope of the contractual relation—and does not relate to operation under the contract or modification of the contract once a valid contract has been negotiated, agreed upon and entered into. Reading the last clause of the subsection into the agreement, as we are obliged to do under Sharp v. Interstate Motor Freight System, supra, 442 S.W.2d l.c. 945[6], the reciprocity commission acted within the limits of and in strict accordance with the subsection. No exemptions were afforded to Iowa-based fleet owners under the terms and conditions of the agreement in excess of those extended by Iowa to vehicles licensed in Missouri. It gave Iowans nothing more than it reserved for Missourians. Once the agreement was made with its

provisions for " * * * substantially equivalent exemptions * * *" the mandate of the statute was fulfilled. We conclude that par. 1, subsection (1), of § 301.-277 does not expressly or by implication provide for the automatic modification of the agreement by one of the contracting states upon the occurrence of a breach of the terms of the agreement by any other contracting state, and does not countenance, authorize or compel unilateral retaliatory action following such a breach.

Any modification of the contract must be made under § 38, which makes provision for its amendment in an orderly way, "by joint action of the contracting States, acting through the officials thereof authorized to enter into this agreement. Any amendment shall be placed in writing and become a part hereof." Cancellation is governed by § 91, which provides that the agreement shall continue in full force and effect until cancelled or revoked by the official or officials of any contracting state authorized to enter into the agreement, upon 30 days written notice to the corresponding officials of the other contracting states. There is no pretense that either § 38 or § 91 was complied with by Iowa.

■ The State Tax Commission's position is based upon the assumption that Iowa denied the exemption it was obligated to afford under the terms of the agreement. It did so, however, only temporarily and until the Iowa Supreme Court ruled that Iowa was required to use the total miles formula and could not use the compact miles formula. Consolidated Freightways Corp. of Delaware v. Nicholas, 258 Iowa 115, 137 N.W.2d 900 (1965), and General Expressways, Inc. v. Iowa Reciprocity Board, 163 N.W.2d 413 (Iowa 1968). Following these decisions Missouri-based carriers have applied for and received from Iowa refunds of license fees based upon recomputation under the total miles formula instead of the compact miles formula. Allowance of Brady's and Bruce's claims for refund will not afford Iowa carriers an exemption not extended

to Missouri carriers, but on the contrary will achieve the equal treatment called for by § 301.277, subd. 1 (1).

The circuit court properly reversed the commission's ruling on the 1968 and 1969 claims.

### The 1966 and 1967 Claims

■ On March 31, 1970 the carriers filed claims for refund of taxes (fees) alleged to have been overpaid to the state. These claims were filed with the department of revenue pursuant to § 136.035, RSMo 1969, V.A.M.S., which requires the director of revenue to refund any overpayment of any tax the state is authorized to collect. Paragraph 3 of that section provides: "No refund shall be made by the director of revenue unless a claim for refund has been filed with him within two years from the date of payment. * * *" The latest date of payment of the four claims was December 4, 1967, hence, as admitted by the motor carriers, these claims involve fees paid outside the 2-year time prescribed in the refund statute within which an aggrieved taxpayer must act. The carriers, however, maintain that the court erred in affirming the denial of their claims for refund of these taxes for the reason that § 301.277, authorizing Missouri Highway Reciprocity Commission to enter into reciprocal agreements affording exemptions from motor vehicle license fees, constituted a waiver of the state's sovereign immunity from the assertion of claims arising from such agreements, and that the carriers are entitled to refunds "without regard to, and independent of, Section 136.035, RSMo. 1969." They say that "[t]he two-year limitation of the refund statute does not restrict Respondents' right to recovery because such right is contractual in nature and originates and exists apart from the statute." V. S. DiCarlo Construction Co., Inc. v. State of Missouri, 485 S.W.2d 52 (Mo.1972), is cited for the proposition that Missouri recognizes the trend toward renunciation of the doctrine of governmental or sovereign immunity in cases involving state contracts, but DiCarlo is not controlling here. The carriers are not parties to any contract in this case. The contract is between Missouri and sixteen other states. Furthermore, DiCarlo dealt with a question of substantive law (whether a state can be sued on contract) and not with a procedural question such as that posed here. It does not follow from the holding in DiCarlo that procedural requirements for the presentation of tax refund claims need not be observed. On the contrary, they must be observed. In Gas Service Co. v. Morris, 353 S.W.2d 645, 655[10] (Mo.1962), this Court said: "The legislature here provided for the taxpayer a procedure to recover a tax illegally collected and to that extent the state consented to be sued. Rogers v. Holmes, 214 Or. 687, 332 P.2d 608, 611(1, 2). When a state consents to be sued, it may be proceeded against only in the manner and to the extent provided by the statute; and the state may prescribe the procedure to be followed and such other terms and conditions as it sees fit. State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, 359; Kleban v. Morris, supra, [363 Mo. 7] 247 S.W.2d [832] 840; American Steel & Wire Co. of New Jersey v. State, 49 Wash.2d 419, 302 P.2d 207, 210(6, 7); Land Holding Corp. v. Board of Finance & Revenue, 388 Pa. 61, 130 A.2d 700, 703 (1–3); Executive Air Service v. Division of Fisheries & Game, [342 Mass. 356] 173 N.E.2d 614, 615 (1, 2). Thus, if as in the present instance the only method and procedure provided for the recovery of illegally collected taxes was through the media of administrative agencies and the judicial review of their decisions, the state's consent to be sued was conditional upon the pursuance of those procedures as the taxpayers' exclusive remedy. Great American Ins. Co. v. Gold, 254 N.C. 168, 118 S.E.2d 792, 795(2); Kleban v. Morris, supra, 247 S.W.2d 840."

■ As further observed in Gas Service Co., supra, 353 S.W.2d l.c. 649, statutes which are said to waive sovereign immuni-

ty to suit are to be strictly construed. The statutes creating the highway reciprocity commission and giving it certain powers and responsibilities do not expressly or by implication abrogate or repeal the preexisting statutory procedures for refund of overpaid taxes, and in particular do not set aside the limitation period prescribed in par. 3 of § 136.035. Insofar as tax refunds are concerned, the diminution of sovereignty implicit in the enactment of § 301.277, supra, enures to the benefit of these motor carriers only to the extent that they comply with the procedural requirements of Missouri's tax refund statutes.

Accordingly, the judgment of the circuit court is affirmed in all things.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.