STATE ex rel. CRAWFORD COUNTY R–II SCHOOL DISTRICT et al., Appellants,

v.

William H. BOUSE, Respondent-Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY CO. et al., Respondents.

Nos. 10707, 10733.

Missouri Court of Appeals, Southern District, En Banc.

Aug. 20, 1979.

Walter D. McQuie, Jr., McQuie & Deiter, Montgomery City, for appellants.

Morton K. Lange, Lange & Lange, Cuba, for respondent-appellant.

J. Kent Howald, Steelville, David Donnelly, Lebanon, for respondents.

FLANIGAN, Chief Judge.

On May 19, 1976, plaintiff Crawford County R–II School District brought this action against defendant William Bouse, the Crawford County collector, challenging the legality of a tax refund made by defendant to third-party defendant, The St. Louis-San Francisco Railway Company (Frisco). The sureties on the collector's bond were named as additional defendants and another school district intervened as a co-plaintiff.

The gist of the petition was: On December 30, 1975, Frisco paid taxes to the collector in the amount of $4,106.70; the payment was made under protest in the manner prescribed by § 139.031, par. 1;[1] Frisco *failed to commence an action* in the circuit court to recover the protested payment within the 90-day period prescribed by § 139.031, par. 2; it was the duty of the

collector, in light of Frisco's non-commencement of the action, to pay the $4,106.70, which the collector previously impounded, to the county treasurer for disbursement to the taxing units, including plaintiff, entitled thereto, and the collector had not performed that duty.

The collector filed a third party petition against Frisco seeking indemnity for any sum for which he might be held liable to the plaintiff.

The gist of the third party petition was: The protest made by Frisco was in proper form and was based upon Frisco's claim that the school districts of Crawford County, including plaintiff and intervenor, had failed to comply with § 137.073 which requires taxing authorities to reduce their rates of levy when the assessed valuation of real or personal property within the county increases by 10 percent or more over the prior year's valuation; there had been such an increase in the assessed valuation in Crawford County; on March 22, 1976, (within the 90-day period prescribed by § 139.031) Frisco *commenced an action* against the collector by filing a petition in the circuit court of Crawford County seeking recovery of the amount protested; after the petition was filed, but on the same day, the collector, under the authority of an order of the *county court* of Crawford County, refunded the protested amount to Frisco; in making the refund the collector acted in good faith and on the belief that Frisco was entitled to the refund and that he was legally authorized to make it; thereafter, again on the same day, Frisco "withdrew its petition theretofore filed in the circuit court."

Prior to the disposition of several motions and prior to the filing of responsive pleadings, the collector filed a motion for summary judgment.[2] The motion, which was supported by affidavits and depositions, made no reference to the third party peti-

1. Unless otherwise indicated all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

2. Rule 74.04(b) permits a defendant to file a motion for summary judgment "at any time."

tion to which Frisco had directed an un-ruled motion to dismiss. Frisco argued in favor of the collector's motion for summary judgment. The trial court sustained the motion and entered judgment in favor of the collector and against the plaintiff and intervenor. The trial court also ruled that the respective liabilities of the sureties and Frisco were "purely derivative" and de-pended upon the collector's liability to the school district and, the latter liability being non-existent, the sureties and Frisco were discharged. The school districts, plaintiff and intervenor, appeal.

The collector's motion for summary judg-ment stated simply that it was based "on the ground that from the pleadings, the deposition and affidavits attached hereto, and the court file, it is apparent that there is no genuine issue as to any material fact, and that defendant is entitled to a judg-ment in his favor as a matter of law." The trial court, in its judgment sustaining the motion, did not specify the ground upon which it based its ruling.

The joint brief of the school districts, as appellants here, advances the principal ar-gument that the judgment of the trial court was based upon an *implied finding* that Frisco *commenced an action* to recover the taxes protested within the 90-day period prescribed by § 139.031. This finding, the school districts argue, has no factual sup-port in the record.

The respective briefs of the other parties take the position that Frisco *did* commence an action within the statutory period and, at least tacitly, agree with the school dis-tricts that the trial court based its ruling on that implied finding. Examination of the documents and briefs presented to the trial

court in support of the motion and in oppo-sition to it leads this court to the conclusion that the trial court did base its ruling on the implied finding which the school dis-tricts here attack.

For reasons to be stated this court holds that the trial court erred in entering sum-mary judgment in favor of the defendant. This court also determines that the instant record is insufficient to authorize it to rule on the correctness of the trial court's im-plied finding.

■ Section 139.031, cited in the petition, is a "revenue law," *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59, 60 (Mo.1974). Section 137.073, cited in the third party petition, is also a "revenue law." *Missouri Pacific Railroad Co. v. Kuehle,* 482 S.W.2d 505, 506 (Mo.1972). If this appeal involved "the construction" of either statute this court would have no jurisdiction. See Mo. Const., Art. V, § 3; *Regal-Tinneys Grove, Etc. v. Fields,* 552 S.W.2d 719, 720[1] (Mo. banc 1977).

The test for determining whether a case is one "involv[ing the] construction of reve-nue laws of this state" is set forth in the landmark case of *State v. Adkins,* 221 Mo. 112, 117, 119 S.W. 1091, 1093[1] (1909) and is quoted below.[3]

Our supreme court has described § 139.-031 as "clear and unambiguous on its face." *Xerox Corp. v. Travers,* 529 S.W.2d 418, 422 (Mo. banc 1975). "Where the meaning of a statute is clear there is no occasion for its construction and the courts will apply it as written." *Foremost Dairies, Inc. v. Thoma-son,* 384 S.W.2d 651, 659[4] (Mo. banc 1964).

The principal argument advanced by the school districts on this appeal seems to be

3. "From a review of the cases we conclude (1) that, when our jurisdiction is put upon the ground that the construction of the revenue laws of the state is involved, the law up for construction must be a state law as contra-dis-tinguished from the provisions of a special city charter; (2) that it makes no difference where the law is to be found, whether under the title of 'revenue' or any other title, so long as it relates to the subject-matter of revenue; (3) that the revenue must be directly and primarily concerned, not merely indirectly or as an inci-

dent; (4) that the term 'revenue law' covers and includes laws relating to the disbursement of the revenue and its preservation, as well as provisions relating to the assessment, levy, and collection of it; and, (5) finally, that where the question in the case is merely one relating to the general practice in circuit courts or before justices of the peace, although the case may pertain to the collection of taxes, yet that the revenue laws are not involved in a constitution-al sense." *State v. Adkins,* 221 Mo. 112, 118–119, 119 S.W. 1091, 1093[2] (1909).

"merely one relating to the general practice in circuit courts," *Adkins,* 119 S.W. at 1093, and "with some doubt and hesitation," *Adkins* at 1093, this court concludes that it has jurisdiction. See *State v. Holland,* 186 Mo. 222, 85 S.W. 356 (1905); see also *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 897 (Mo. banc 1978).

On March 22, 1976, William J. Graham, a land and tax agent for Frisco, went to the office of the circuit clerk of Crawford County for the purpose of filing a petition to recover the protested taxes. Graham handed the original petition and the service copy (one of two copies he had with him) to deputy clerk Perrigue and told her he wanted to file the case.

According to Mrs. Perrigue, "I accepted the petition, stamped it filed, and assigned it number C–16–76, which I wrote in the petition in ink. I then entered the style of the case in the civil fee book on page 632 right after case number C–15–76 on page 631. At the time Graham handed me the petition he did not say anything to me about holding it in abeyance or about not actually filing it. He did not pay the filing fee at the time he handed me the petition but I assumed he would pay it before he left so I proceeded to stamp it filed, gave it a number, and entered it in the fee book. In the meantime Mr. Hardesty returned and I returned to my desk."

■ Although Graham had with him a check "made out to the circuit clerk" which

was to be used to pay "the filing fee" of $50, he did not pay the fee at the time nor was he asked to do so.[4]

Circuit clerk Hardesty, who had been away from the office for a few minutes, returned to the office while Graham was still there. Hardesty had a conversation with Graham in which Hardesty told Graham that he thought the county court was in session, the prosecutor was upstairs, the collector was there, and "maybe we could do something now."

Leaving the suit papers in the clerk's office, Graham went to the office of the collector. The collector testified that Graham "told me he had filed a suit in the circuit clerk's office to recover the taxes Frisco had paid under protest." The collector also testified that Graham "showed me a copy of the petition and showed me the figures upon which the protest was based, and the amount that Frisco had been over-taxed by the various school districts. After checking his figures I concluded that they were correct,[5] and concluded that based on previous experience with similar cases, that it was useless to go to the trouble and expense of defending it."

The collector, Graham, and possibly the county prosecutor, conferred with the county court which was in session that afternoon. The county court issued an order that "the taxes in the amount of $4,106.70 paid under protest by [Frisco] be refunded

---

4. It is the clear trend of modern authority that the payment of a filing fee is not a jurisdictional requisite to the efficacy of a filing. See *Parissi v. Telechron, Inc.,* 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955); *Bolduc v. United States,* 189 F.Supp. 640 (D.C.1960); *Thomas v. City of Gainesville,* 220 So.2d 644 (Fla.App. 1969); *Avco Financial Services v. Caldwell,* 219 Kan. 59, 547 P.2d 756 (1976); and *Wrenn v. American Cast Iron Pipe Co.,* 575 F.2d 544 (5th Cir. 1978).

"Since payment of the docket fee affects only the clerk of the district court, and an adverse party is not affected by the time of the payment of the docket fee, it should not be regarded as jurisdictional." *Avco,* supra, 547 P.2d at 760.

"As to the requirement that a party offering an instrument for filing perform some required

condition precedent, as tendering fees, and that such condition may be waived by the officer, see *State v. Pieski,* 248 Mo. 715, 719, 154 S.W. 747, 748." *Ferguson v. Long,* 341 Mo. 182, 107 S.W.2d 7, 10 (1937).

5. Although outside the instant record, in *Continental Tel. Co. v. Bouse,* 580 S.W.2d 759 (Mo. App.1979), a proceeding to which instant plaintiff was a party, it was said: "In view of the increase in assessed valuation in Crawford County in 1975, § 137.073 was 'triggered' with respect to all nine school districts. Each of them was under a duty to comply with the statute and to do so in the manner spelled out in [*Mo. Pac. R. Co. v. Jones,* 544 S.W.2d 541 (Mo.1976)]." The record there showed that the statute did not receive compliance.

to [Frisco]." The collector later made the refund.[6]

With a copy of the order of the county court in his possession, Graham returned to the office of the circuit clerk. Graham's testimony was, "The petition was lying by my briefcase and I just picked them up, put them in it and left. I presume I picked up the original and both copies. I had not left them lying there. The deputy clerk had them in her hand but when I came back they were lying there by my briefcase. . . . I picked up whatever was lying there and put it in my briefcase. I never counted them." Graham, who is not an attorney, further testified that he intended to file the case and had not received any instructions to dismiss it.

Circuit clerk Hardesty testified that he did not make "a docket sheet or put it in the court's docket book." No summons was issued. Thereafter another lawsuit was filed and it was given the number previously assigned to the Frisco petition.

On August 9, 1976, an attorney for Frisco sent the original petition back to the clerk. On August 18, 1976, the attorney sent the clerk the $50 filing fee. The circuit clerk testified that on August 9, "I started in where I had left off. I scratched out the case I had filed in place of the Frisco case and gave [the Frisco case] the original number and issued a summons to the collector. I issued the summons on August 9 because I felt sure Frisco would pay the fee."

Rule 53.01, as amended in 1972, reads: "A civil action is commenced by filing a petition with the court."

It is the contention of the school districts that Frisco did not commence the action on March 22, 1976, for the reason that the petition was not "filed with the court" within the meaning of Rule 53.01.[7]

Whether or not the happenings of March 22, 1976, amounted to "filing a petition with the court," the collector acted without lawful authority in making the refund.

Under the second paragraph of § 139.031, "If any taxpayer so protesting his taxes *shall fail to commence an action* in the circuit court for the recovery of the taxes protested within the time herein prescribed, such protest shall become null and void and of no effect, and the collector shall *then disburse to the proper official* the taxes impounded . . ."[8]

Under the third paragraph of § 139.031, dealing with the situation where a taxpayer *has commenced a timely action* in the circuit court for the recovery of the taxes protested, "[t]rial of the action in the circuit court shall be in the manner prescribed for nonjury civil proceedings, and, *after determination of the issues,* the court shall make such orders as may be just and equitable to refund to the taxpayer all or any part of the taxes paid under protest or to authorize the collector to release and disburse all or any part of the impounded taxes . . ." As stated in *Xerox Corp. v. Travers,* supra, 529 S.W.2d at 422, "The collector should not disburse the impounded funds until all proceedings in the *circuit court* of the county in which he maintains his office are *finalized.*" (Emphasis added.)

**6.** Although Frisco did not file an answer to the third party petition, its brief in this court states: "$4,106.70, the amount protested, was paid to Frisco by the collector and receipted for by Frisco April 1, 1976."

**7.** The counterpart to the present version of Rule 53.01 is Federal Rule 3 which reads: "A civil action is commenced by filing a complaint with the court." With respect to Rule 3, a leading authority has stated: "Filing a complaint requires nothing more than delivery to a court officer authorized to receive it; the actual establishment of jurisdiction over defendant is not essential to commencement of the action." Wright & Miller, Fed.Prac. & Proc., Vol. 4, § 1052, p. 168.

**8.** Crawford County is a county of the third class. Official Manual, State of Missouri, 1975–76, p. 1145.

"The county collector in counties of the third and fourth classes, except in counties under township organization, shall pay over to the county treasurer at least once in every month all moneys received and collected by him which are due each school district . . . The county treasurer in such counties shall pay over to the treasurer of the school board of six-director districts, at least once in every month, all moneys so received by him to which the board is entitled." § 165.071, par. 2.

■ *If* Frisco commenced an action, an order of the *circuit court* "finalizing" the proceedings was a condition precedent to the disbursement of the impounded funds.[9] *If* Frisco failed to commence an action, the disbursement should have been made to the county treasurer. Under either hypothesis, the refund was unauthorized.

Authority exists to the effect that the collector's unauthorized refund to Frisco of the protested amount constituted a breach of the condition of his bond, 84 C.J.S. Taxation § 678, p. 1355. The instant judgment must be reversed and the cause remanded. The collector appealed from the portion of the judgment of the trial court which found against the collector and in favor of Frisco on the third party petition.[10] That portion of the judgment is also reversed.

This court is aware of the fact that upon remand a live issue will be whether or not the events of March 22, 1976, constituted the commencement of a civil action by Frisco. The briefs of the parties have focused on that issue. Although authority exists to the effect that it is proper for this court "to notice certain contentions which will necessarily be involved on another trial," *Babcock v. Rieger*, 332 Mo. 528, 543, 58 S.W.2d 722, 729[6] (Mo. banc 1933), examination of the affidavits and the depositions which were before the trial court when it made its ruling shows that certain facts, material to the resolution of that issue, are in dispute. Indeed that is another reason why the trial court was in error in sustaining defendant's motion for summary judgment.[11]

The testimony of Graham was to the general effect that he handed the suit papers to the deputy clerk and gave her unconditional instructions to file the action. The testimony of the deputy clerk tended to support that testimony. It is a clear inference from their testimony that those instructions were not withdrawn. On the other hand, the deposition of circuit clerk Hardesty, which was not totally consistent with his own affidavit, attributed to Graham a certain statement made during the course of their initial conversation in the clerk's office. The statement was: "Maybe we can get this thing settled—let's hold up a few minutes to see whether we really want to file it—or leave this—put this case on the docket."

In view of the conflicts in the testimony, this court refrains from expressing an opinion with regard to the correctness of the trial court's implied finding.

The judgment is reversed and the cause remanded.

HOGAN, TITUS and GREENE, JJ., concur.

BILLINGS, J., concurs in result only.

MAUS, J., concurs in result only (separate opinion filed).

MAUS, Judge, concurring in result.

I concur in result. However, the majority opinion after hypothesizing that the Frisco action was or was not filed states: "[u]nder either hypothesis, the refund was

---

9. None of the parties claims that the judgment *in the instant action* constituted a ruling on the merits of Frisco's claim for a refund. Although the contents of Frisco's petition have been alluded to, the petition itself is not a part of the instant record nor does this record contain evidence sufficient to support an adjudication of the merits of Frisco's claim. Indeed, so far as the instant record reflects, Frisco is still in possession of the refund.

10. There has been no attack in this court upon the sufficiency of the petition or the third party petition "to state a claim upon which relief can be granted," although Rule 55.27(g)(2) permits such an attack to be made on appeal. Still pending in the trial court, and unruled by that tribunal, are motions attacking the sufficiency of those pleadings. This court expresses no opinion upon the validity of those motions.

11. "In determining whether the trial court erred in entering summary judgment in favor of the defendant this court must view the record in the light most favorable to the plaintiff. . . . Summary judgment is a drastic remedy . . . . A 'genuine issue of fact' exists, precluding the rendition of summary judgment, when there is the 'slightest doubt' as to the facts, . . . so long as the fact in doubt is a material one which has 'legal probative force as to a controlling issue.' " (Authorities cited.) *Peer v. MFA Milling Co.*, 578 S.W.2d 291, 292 (Mo.App. 1979).

unauthorized". § 139.031(4) RSMo, V.A. M.S. provides in part: "All the county collectors . . ., shall, upon written application of a taxpayer, refund any real or tangible personal property tax *mistakenly* or *erroneously* paid in whole or in part to the collector." (Emphasis ours) The section further provides that such application shall be made within one year after payment and that the county court shall make available funds for the purpose of making such refunds.

The Attorney General, Opinion No. 97, February 10, 1970, has given his opinion that this sub-section has no application to the refund of taxes paid as the result of an allegedly excessive levy. This opinion indicates the sub-section is applicable to errors or mistakes such as double payment of the same tax. Without attempting to decide the scope of the sub-section and merely for the purpose of illustrating the point involved, a similar section dealing with refunds should be noted. § 136.035 RSMo, V.A.M.S. in part provides that the director of revenue "shall refund any *overpayment* or *erroneous* payment of any tax . . ."[1] (Emphasis ours) The section provides a two-year limitation upon the filing of claims. The Supreme Court in holding claims for refunds barred by the limitation has at least implied that the section is applicable to the director's refund of allegedly invalid registration fees intentionally paid. *Ellsworth Freight Lines v. Mo. Hwy. Recip.,* 568 S.W.2d 521 (Mo. banc 1978); *State ex rel. Brady Motor., Inc. v. State Tax Com'n.,* 517 S.W.2d 133 (Mo.1974).

Whether or not a collector is by § 139.031(4) authorized to refund allegedly invalid taxes intentionally paid does involve a construction of the revenue laws. *State v. Adkins,* 221 Mo. 112, 119 S.W. 1091 (1909). The opinion of this court should not be interpreted as construing the scope of § 139.031(4). That construction must be made by the Supreme Court. *Regal-Tinneys Grove, etc. v. Fields,* 552 S.W.2d 719

(Mo. banc 1977); *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59 (Mo.1974).

---

1. Slightly different provisions relating to refunds of sales taxes are contained in § 144.190 RSMo, V.A.M.S.