Dear Dr. Antonio:
This opinion is in response to your questions:
 1. If taxes are paid under protest and impounded in a separate fund as provided in Section 139.031.2, RSMo 1978, is a county collector in a third class, nontownship county entitled to his commission for mailing statements, as authorized by Section 52.250, RSMo 1978, on such taxes when the money is paid into the separate fund or when the money is distributed from the fund?
 2. If taxes are paid under protest and impounded in a separate fund as provided in Section 139.031.2 RSMo 1978, is a county collector in a third class, nontownship county entitled to his current commission, as authorized by Section 52.260, RSMo 1978, on such taxes when the money is paid into the separate fund or when the money is distributed from the fund?
 3. For purposes of determining if a collector in a third class, nontownship county has exceeded the ceiling on commissions for mailing statements imposed by Section 52.250, RSMo 1978, are commissions on taxes paid under protest and impounded in a separate fund attributed to the year in which the protested taxes are paid into the separate fund or to the year in which the protested taxes are distributed from the separate fund?
 4. For purposes of determining if a collector in a third class, nontownship county has exceeded the ceiling on current commissions imposed by Section 52.270, RSMo 1978, are commissions on taxes paid under protest and impounded in a separate fund attributed to the year in which the protested taxes are paid into the separate fund or to the year in which the protested taxes are distributed from the separate fund?
 5. What amount of commissions is the [collector in a third class, nontownship county] entitled to retain on $821,902 of taxes paid under protest in 1978, which amount was impounded in a separate fund until November, 1979 at which time $436,212 was distributed to the appropriate governmental entities and $385,690 was returned to the taxpayer?
Because your fifth question relates to specific facts, we respectfully decline to answer it. However, we are confident that the principles upon which we base our answers to your first four questions will provide adequate direction in determining the proper commissions.
Your questions relate to a third class county not having township organization, in which the collector of revenue is not required to maintain a branch office under Section 52.120, RSMo 1978. During the 1978 tax year, a taxpayer protested the payment of $821,902 in real estate taxes as provided in Section 139.031.1, RSMo 1978. That sum was impounded in a separate fund by the county collector as provided in Section 139.031.2, RSMo 1978. In November of 1979, the circuit court determined that $436,212 of the impounded taxes should be disbursed; the remaining $385,690 was refunded to the taxpayer.
Sections 52.250, 52.260 and 52.270, RSMo 1978, govern the calculation of a third class county collector's mailing and collecting commissions.
We note that C.C.S.S.B. 9 (79th General Assembly, First Regular Session, 1977), effective March 5, 1979, amended Sections 52.250,52.260 and 52.270, RSMo. Without discussing in detail the changes wrought by C.C.S.S.B. 9, it is sufficient to say that the taxes paid under protest were paid and impounded prior to the adoption of C.C.S.S.B. 9, while the final determination of actual tax liability and disbursement of taxes took place after March 5, 1979.
Section 52.250, RSMo 1978, states in pertinent part:
 The collectors in third class counties shall receive one-half of one percent . . . of all current taxes collected, including current delinquent taxes, exclusive of all current railroad and utility taxes collected, as compensation for mailing said statements and receipts. Said compensation shall not exceed ten thousand dollars per year . . . [Emphasis added.]
Section 52.260, RSMo 1978, as applied to a third-class, nontownship county, states in pertinent part:
 The collector in counties not having township organization, . . . shall collect and retain the following commissions for collecting
all state, county, bridge, road, school, back and delinquent, and all other local taxes, including merchants', manufacturers' and liquor and beer licenses, other than ditch and levee taxes, and the commissions constitute his compensation except in counties where the collector is paid a salary in lieu of fees:
* * *
 (3) In all counties wherein the total amount levied for any one year exceeds two million dollars, a commission of one percent on the amounts collected. [Emphasis added.]
Section 52.270.2, RSMo 1978, states:
 The collector of revenue in any county within the classification of subdivision (3) of section 52.260 shall present for allowance proper vouchers for all disbursements made by him on account of salaries and expenses of his office and other costs of collecting the revenue,
which shall be allowed as against the commissions collected by him; and out of the residue of commissions in his hands after deducting the amounts so allowed, the collector may retain a compensation for his services at the rate of ten thousand dollars per year. If the residue of commissions is less than sufficient to pay the above compensation, the entire residue shall be allowed to him as full payment for his services. If the residue is more than sufficient to pay the compensation, the surplus shall be paid over to the county. [Emphasis added.]
The language of the above statutes indicates that the county collector is entitled to commissions on the amount of taxes "collected" and for "collecting" certain taxes. Therefore, in addressing your first and second questions, the determinative issue is whether taxes paid under protest are collected for the purpose of calculating commissions due under Sections 52.250, 52.260 and 52.270, at the time of payment of the protested taxes or at the time of disbursement of the protested taxes to the proper officials.
Under Section 139.031.1, the taxpayer must file with the collector a written statement setting forth the grounds on which his protest is based. The collector issues the protesting taxpayer a receipt for the taxes paid, noting thereon that the taxes are being paid under protest. Section 139.090, RSMo Supp. 1982; Opinion No. 73, Holt, January 9, 1970. The collector is required to impound the protested taxes in a separate fund. Section 139.031.2. Within 90 days, the taxpayer must file an action against the collector for a tax refund in the circuit court of the county in which the collector maintains his office. Section 139.031.2;Xerox Corporation v. Travers, 529 S.W.2d 418, 422 (Mo. banc 1975). If the taxpayer commences such an action, a court order finalizing the proceeding is a condition precedent to the disbursement of the impounded funds. In other words, the collector may not disburse or refund the impounded funds until the protest proceeding is completed. Section 139.031.3; Xerox Corporation v. Travers,supra; State ex rel. Crawford County R-II School District v.Bouse, 586 S.W.2d 61, 66 (Mo.App. 1979).
We believe that taxes paid under protest are not "collected" taxes within the purview of Sections 52.250, 52.260 and 52.270. In James v. Consolidated Steel Corporation, Ltd., 195 S.W.2d 955
(Tx.App. 1946), the court held:
 Whereas, under the protest statute, the State Treasurer is required to place such payments in a suspense account to await the outcome of the adjudication . . . where such suit is filed as therein provided. Unless and until such judicial determination is made, such payments cannot, in legal contemplation, be deemed to be taxes collected. . . . Id. at 961.
See also, Roles v. Earle, 195 F.2d 346 (9th Cir. 1952).
We agree with the holding in the James case. Tax funds paid under protest and impounded pursuant to Section 139.031 are not "collected" for the purpose of calculating the collector's commissions until such funds are disbursed to the proper officials. Such a conclusion is entirely logical. The amount of the protested taxes to be distributed to the governmental entities cannot be determined until such funds are disbursed pursuant to a court order or as otherwise provided in Section 139.031.
With regard to your third question, we are of the opinion that the law in effect when the collector mailed tax statements controls the amount of commission which the collector may receive.
The fact situation you present is an unusual one. The county collector mailed his tax statements prior to the effective date of an amendment to the law regarding mailing commissions, and because of a protest filed by a taxpayer, final determination of the proper tax liability did not take place until after the effective date of that amendment. Further, the new law placed a ceiling on the mailing commissions which the collector could receive; that ceiling did not exist when the collector mailed the tax statements which generated the protested tax payment.
Section 52.230, RSMo 1978, requires inter alia, the collector to mail tax statements to all resident taxpayers each year at least fifteen days prior to the delinquent date for the tax. Section52.250 provides that collectors in third class counties shall receive one-half of one percent of all current taxes collected,"as compensation for mailing said statements and receipts. . . ." [Emphasis added].
Clearly, once the final tax statement is mailed pursuant to Section 52.230, the collector has completed all of the work required to earn the commission. The mere fact that the amount of the commission cannot be determined until a protest is decided does not require the mailing commission to be credited in another tax year.
While we have found no Missouri authority which directly addresses your third question, we believe cases regarding successor collector issues are instructive for purpose of determining the proper law under which commissions are earned. In Douglass v. Ray,199 S.W. 568 (Mo.App. 1917), the Springfield Court of Appeals ruled that where a collector filed suit to collect a delinquent tax and the payment of that tax was received by his successor, the commission properly should be paid to the collector who filed the action to receive the tax.
Similarly, in Kirkpatrick v. Rose, 344 S.W.2d 59 (Mo. 1961), the Supreme Court held that when a collector died in office, having performed ninety percent of the mailing duties, his estate was entitled to ninety percent of the commission for taxes collected, pursuant to Section 52.250, RSMo. The court stated:
 This [mailing commission] is for the labor, time, and expense incurred in the performance of the extra duties imposed, and the natural legislative intent would be to reimburse and compensate the one who paid the expense and discharged the duties. . . . Id. at 63-64.
The labor and expense provided by the collector is for a given year. It is only proper to reimburse the collector according to the law in effect in the year in which the expense is made.
To hold otherwise, particularly in the face of a subsequently imposed ceiling for mailing commissions, would result in penalizing the collector whenever a tax was paid under protest. If the mailing commission ultimately received upon resolution of the protest counted against the ceiling in the year in which the protest is resolved (assuming a different tax year), the collector would not be reimbursed for his labor and expenses in the year in which the mailing commissions were earned. Further, if the amount of the protested tax was large, as in the fact situation you pose, to credit the commission received for past year's tax against a current year's commissions would diminish the compensation which the collector could receive for the current year's expenses and labor. We do not believe such an inequitable result was contemplated by the General Assembly when it amended Section 52.250.
In answer to your fourth question, we hold that commissions earned on taxes paid under protest must be attributed to the year in which the protested taxes were paid under protest, not to the year in which the funds were distributed following resolution of the protest, for purposes of computing a collector's commission pursuant to Section 52.260.2. This answer is based on and consistent with the reasoning employed in our answer to your third question.
CONCLUSION
It is the opinion of this office that taxes paid under protest as provided in Section 139.031, RSMo 1978, are not considered collected for the purpose of calculating the collector's commissions as provided in Sections 52.250, 52.260 and 52.270, RSMo 1978, until such taxes are disbursed to the proper governmental entities. However, the statutes in effect at the time the protested taxes were paid and impounded in a separate account apply in determining the collector's compensation.
Very truly yours,
 JOHN ASHCROFT Attorney General